*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NIKKI DESHAWN WILLIAMS,

Plaintiff-Appellee,

v

JOHN LEWIS WILLIAMS, JR.,

Defendant-Appellant.

UNPUBLISHED
July 13, 2026
11:02 AM

No. 374595
Wayne Circuit Court
LC No. 23-103094-DM

Before: RICK, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right the court's judgment of divorce, which (1) divided the marital estate; (2) granted plaintiff's request for spousal support; and (3) granted plaintiff's request for attorney fees. We affirm.

## I. BACKGROUND

The parties married in Buffalo, New York on July 2, 2013. At the time, the parties had a minor child,[1] plaintiff worked as a hairstylist, and defendant worked for Ford Motor Company.

In 2013, the parties relocated to Michigan when defendant took a different position as an engineer with Ford. Following the move, plaintiff took on the role of homemaker and stay-at-home mom for several years, before returning to the workforce as a hairstylist renting a booth at a local salon. Plaintiff testified that the parties had an arrangement whereby defendant maintained the home financially and had full control over the finances, including the use of his credit cards.

Plaintiff initiated these divorce proceedings on March 24, 2023, and the court immediately entered ex parte orders for maintenance of the financial status quo and for mutual injunction regarding the preservation of assets. The status quo order stated, in part:

---

[1] The parties' daughter was no longer a minor at the time the divorce was finalized.

Defendant shall maintain the financial status quo of the parties' marital home . . . by continuing to pay all monthly household obligations and expenses as he customarily has done so during the marriage without interruption. Plaintiff shall continue to maintain and pay her portion of expenses as customarily practiced without interruption. Both parties shall continue to pay their respective shares as customarily practiced during the pendency of this action or until further order of this court.

And the mutual injunctive order required that the parties refrain from concealing, selling, or destroying assets.

On June 27, 2023, during the pendency of the proceedings, Ford terminated defendant from his position, before he would have become eligible for his full pension with the company. According to defendant, he declined to take the severance package offered so that he could maintain his eligibility to sue for wrongful discharge, and indicated that he planned to file suit against Ford.

Throughout discovery and while attending mediation in an effort to settle the case, defendant was less than forthcoming with his financial information. In a September 25, 2023 case management conference order, the court ordered the parties to return to mediation after plaintiff received defendant's employment and retirement information. Plaintiff later moved to compel defendant to produce his retirement and pension asset information, asserting that the parties had already attended mediation twice, in July and on September 20, the court instructed defendant to provide the information in its September 25 case management order, and defendant had failed to do so. The court granted the motion and ordered defendant to produce his retirement account statements for the last 24 months within two weeks, or risk being fined $100 per day past the deadline.

Plaintiff moved to compel production of the same retirement and pension information a second time, asserting that she still had not received the information. The court granted the motion and denied defendant's motion for reconsideration. In doing so, the court ordered defendant to pay $2,500 in attorney fees to plaintiff's counsel for failure to comply with its December 5, 2023 order granting plaintiff's initial motion to compel.

In his trial brief, defendant asserted that his brother loaned him money so that he could pay all of the marital bills with no help from plaintiff, and requested that he be awarded any proceeds from his lawsuit against Ford as well as his entire pension. He also requested that neither party receive spousal support or attorney fees. In contrast, plaintiff requested both spousal support and attorney fees from defendant. She also asserted that she should bear no responsibility for repayment of the loans from defendant's brother because she neither consented to, nor knew about the loans.

The court held its bench trial in five hearings over several weeks. The relevant details of the proceedings and testimony will be recounted below. Ultimately, the court issued its opinion and order granting the parties' divorce. With regard to the division of assets, the court equally divided the residential property, including household furniture, and the marital portion of defendant's retirement account. As to defendant's Ford lawsuit, the court divided the lost wages

portion of the settlement equally between the parties, and awarded plaintiff 25% of the emotional distress portion. Each party was awarded their own vehicle and would be responsible for any and all debt in their own name. With regard to the loans from defendant's brother, the court ordered defendant solely responsible for repayment. The court also awarded plaintiff spousal support in the amount of $500 per month for 12 months, as well as $10,000 in attorney fees. Following entry of a final judgment of divorce codifying these decisions, defendant appealed.

## II. DISTRIBUTION OF PROPERTY

Defendant argues first that the court's distribution of property was punitive rather than equitable, as evidenced by the court's decision to award plaintiff a portion of his settlement for emotional damages and attorney fees.

With regard to the division of marital assets:

A trial court's factual findings regarding property distribution are reviewed for clear error. *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008). "A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made." *Id*. Substantial deference is afforded to the trial court's factual findings. *Id*. "If the trial court's findings of fact are upheld, this Court must decide whether the trial court's dispositional ruling was fair and equitable in light of those facts. This Court will affirm the lower court's discretionary ruling unless it is left with the firm conviction that the division was inequitable." *Id*. at 717-718. [*Seifeddine v Jaber*, 327 Mich App 514, 522; 934 NW2d 64 (2019).]

This Court reviews a trial court's award of attorney fees for an abuse of discretion. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015).

An abuse of discretion occurs when the result falls outside the range of principled outcomes. However, findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error. A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. [*Id*. at 699-700 (quotation marks and citations omitted).

Caselaw dictates that:

The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances. Although mathematical equality is not required in the division of the marital estate, the trial court must clearly explain any significant departure from congruence. [*Seifeddine*, 327 Mich App at 522 (quotation marks and citations omitted).]

Trial courts may consider the following factors to divide the marital estate:

(1) the duration of the marriage, (2) the contributions of the parties to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life situation of the parties, (6) the necessities and circumstances of the parties, (7) the parties'

earning abilities, (8) the parties' past relations and conduct, and (9) general principles of equity. [*Id*. (quotation marks and citation omitted).]

Defendant challenges the court's award of attorney fees and distribution of the damages from his wrongful termination lawsuit more specifically in additional issues raised on appeal, which we address below. Here, he argues that the court used the distribution of asserts to punish him, as evidenced by its decisions to award plaintiff a portion of his non-marital lawsuit settlement and attorney fees.

With regard to the lawsuit, defendant asserts that in awarding plaintiff a portion of the compensatory damages for emotional distress he received in the settlement, the court reasoned defendant had hidden the results of his settlement and failed to provide certain financial documentation. While the court did reason that defendant was not forthcoming with the lawsuit or settlement information, it also relied on principles of equity in making its decision, stating:

> As to the Ford/EEOC Claim, the Court finds that the portion awarded to Defendant for loss [sic] wages is [a] marital asset subject to equitable division by this Court. The sum of $66,121.14 for lost wages is marital property in its entirety and reflects lost wages for the early termination of Defendant, which are wages that would have been earned prior to the divorce. The Plaintiff is hereby awarded one-half (1/2) of the lost wages portion of the Claim (i.e. $33,060.57). The Plaintiff shall be responsible for federal and state income arising out of this award.
>
> * * *
>
> Although the Defendant was paid $99,181.70 for Compensatory Damages, which typically are not a marital asset, the Court may nevertheless distribute the award pursuant to MCL 552.23 and 552.401. See *Pickering v Pickering*, 268 Mich. App. 1, 706 NW2d 835 (2005). The Court finds that (i) it would be fair and equitable, in light of the earning ability of the parties and their current financial status, and (ii) Defendant's behavior in attempting to secrete [sic] the results of the Claim and (iii) not providing complete financial documentation and/or disclosure to the Plaintiff, the Court hereby awards the Plaintiff 25% of the amount paid to the Defendant as Compensatory Damages. (25% x $99,181.70 = $24,795.42). This amount shall be paid by Defendant to the Plaintiff by Defendant's counsel forthwith.

"The trial court may utilize its equitable powers under MCL 552.23(1) and MCL 552.401 to award separate property to the parties in order to reach an equitable result." *Skaates v Kayser*, 333 Mich App 61, 82; 959 NW2d 33 (2020). MCL 552.23(1) allows for an award of the separate property of one spouse to the other spouse if division of the marital estate is insufficient to the extent "the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case." MCL 552.23(1). And under MCL 552.401, the court may award "to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property." MCL 552.401. Further, although the court's role in the division of assets is to achieve equity, not to punish one

-4-

of the parties, the court may consider a party's attempt to conceal assets. *Hodge v Parks*, 303 Mich App 552, 561; 844 NW2d 189 (2014).

Plaintiff testified that she earns approximately $400 to $475 dollars weekly, or a net of $24,000 per year. She stated that she was behind on her $1,000 monthly booth rental, and that she would be paying numerous bills for the first time since marrying defendant, including household rent at $1,200 and utilities for her apartment.

Although defendant lost his job during the pendency of the proceedings, and was unemployed when the court made its decision, he was earning $134,000 just prior to his termination, received a $1,433 pension payment each month, settled with Ford for a gross amount of $165,302.84, and received approximately $50,000 from his brother. And plaintiff contributed to defendant's accumulation of earnings by leaving work for a period of time to care for the parties' home and minor daughter. See *Sparks v Sparks*, 440 Mich 141, 160; 485 NW2d 893 (1992) ("[T]he court may choose to consider the interruption of the personal career or education of either party."). Despite testimony that the money given to defendant by his brother was meant to be a loan, they had no written agreement, nor any specific plan for repayment. Further, defendant testified that numerous health issues prevented him from working, but the trial court found this testimony not credible, as defendant provided no documentation of medical limitations, and we "defer[] to a trial court's findings of fact stemming from credibility determinations." *Richards*, 310 Mich App at 694.

The record also supports the court's findings that defendant attempted to conceal certain financial information from plaintiff and the court. He failed to disclose his Woodlawn bank account on his financial disclosure form, or account for whether he spent his brother's loan money on the mortgage or other essential bills. He delayed providing information on his retirement accounts after requested by plaintiff and ordered by the court. He produced what he represented to be his 2022 tax return, but later admitted that it was not in fact the return he submitted to the government. And contrary to defendant's assertions of ignorance regarding what he could share about the settlement with Ford, he failed to provide plaintiff or the court with even general information like when he filed suit, and who was representing him in the matter, leading the court to eventually hunt down the information. As a result, defendant's own actions led to the court's determination that principles of equity required the court to award plaintiff additional separate property. MCL 552.23(1).

Accordingly, the court followed the applicable law in its distribution of property, including the non-marital portion of defendant's Ford settlement, and we are unconvinced by defendant's argument that the court intended to punish him with its division of property. The same is true with regard to the court's award of attorney fees.

The court awarded attorney fees to plaintiff pursuant to MCL 552.13(1) and MCR 3.206(D)(2)(b), stating:

> The Court believes that the Defendant acted in bad faith when he failed to provide financial information and disclosures, including basic information regarding his tax filings, the Ford/EEOC Claim, debts, loans, and mortgage information. His failure led to a pro-longed litigation process and prevented the case from settling (even

after 3 rounds of mediation). Furthermore, the Defendant failed to abide by the Status Quo Order entered by this Court by failing to make payments on the Explorer and may have taken out loans against his pension or the SSIP account.

The merits of the attorney fee award will be discussed below, but we are unpersuaded by defendant's argument that the court awarded attorney fees in an effort to simply punish him for his conduct, because the record shows otherwise and supports the trial court's ruling.

Under MCR 3.206(D)(2)(b), the court may award attorney fees if the party requesting those fees alleges facts sufficient to show that "the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules." Consistent with the court's findings and reasoning, defendant previously refused to comply with a court order regarding the disclosure of financial information, and attempted to mislead and misrepresent his financial status, as described in greater detail above.

Finally, although the court made certain statements that may lead one to believe it intended to punish defendant for his behavior, when viewed in context, we are unconvinced that the court actually did so. In a moment of frustration regarding defendant's failure to provide his most recent tax returns to plaintiff and to the court, the court stated that defendant would pay the price for his mistakes and that it would take every penny from defendant. But the court also reiterated that it wanted the information in order to make an informed, equitable decision for the parties, and that it was not the job of the court to take anything from either of them. Accordingly, we reject defendant's argument that the trial court's distribution of property was punitive rather than equitable.

Defendant next challenges the merits of the trial court's decision to award plaintiff a portion of his separate property – namely, the emotional damages portion of his settlement with Ford.

"In any divorce action, a trial court must divide marital property between the parties and, in doing so, it must first determine what property is marital and what property is separate." *Cunningham v Cunningham*, 289 Mich App 195, 200-201; 795 NW2d 826 (2010).

> Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage. Once a court has determined what property is marital, the whole of which constitutes the marital estate, only then may it apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances. As a general principle, when the marital estate is divided each party takes away from the marriage the party's own separate estate with no invasion by the other party. [*Id*. at 201 (quotation marks and citations omitted).]

> Categorizing marital and separate property is not always easy. *Id*.

> While income earned by one spouse during the duration of the marriage is generally presumed to be marital property, there are occasions when property earned or acquired during the marriage may be deemed separate property. For example, an

inheritance received by one spouse during the marriage and kept separate from marital property is separate property. Similarly, proceeds received by one spouse in a personal injury lawsuit meant to compensate for pain and suffering, as opposed to lost wages, are generally considered separate property. [*Id*. (citations omitted).]

Again, the court found that, as part of his settlement with Ford, defendant "received $66,121.14 for lost wages (of which Defendant will net $43,706 after deducting $22,415 in taxes); $99,181.70 in compensatory damages and $31,351.42 in attorney fees." And the court awarded plaintiff half of the lost wages and 25% of the compensatory damages, stating: "Although the Defendant was paid $99,181.70 for Compensatory Damages, which typically are not a marital asset, the Court may nevertheless distribute the award pursuant to MCL 552.23 and 552.401. See *Pickering v Pickering*, 268 Mich. App. 1, 706 NW2d 835 (2005)."

Defendant does not challenge the division of the lost wages portion of his settlement. Rather, he argues that the court improperly relied on *Pickering* to invade the emotional damages portion of his settlement. In *Pickering*, 268 Mich App at 10-12, this Court upheld the trial court's award of a share of pain and suffering damages from a personal injury lawsuit, which would generally be considered nonmarital property, to the uninjured spouse, reasoning that both parties were named as plaintiffs in the lawsuit, the uninjured spouse claimed loss of consortium, a settlement check was issued to both parties, and the funds were treated as a joint marital asset.

Defendant asserts that plaintiff was never listed as a party to the lawsuit against Ford, and made no claim for loss of consortium. Thus, he argues, the court should not have awarded any portion of his settlement for emotional damages to plaintiff. But defendant's argument ignores that even where damages are rightfully considered separate property, they remain subject to equitable division in accordance with MCL 552.23 and MCL 552.401, see *Pickering*, 268 Mich App at 10-11, which the court relied on to divide the settlement.

"The trial court may utilize its equitable powers under MCL 552.23(1) and MCL 552.401 to award separate property to the parties in order to reach an equitable result." *Skaates*, 323 Mich App at 82. MCL 552.23(1) allows for an award of the separate property of one spouse to the other spouse if division of the marital estate is insufficient to the extent "the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case." MCL 552.23(1). And under MCL 552.401, the court may award "to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property." MCL 552.401.

The court utilized these powers here, awarding plaintiff 25% of the compensatory damages portion of defendant's settlement with Ford because "(i) it would be fair and equitable, in light of the earning ability of the parties and their current financial status, and (ii) Defendant's behavior in attempting to secrete [sic] the results of the Claim and (iii) not providing complete financial documentation and/or disclosure to the Plaintiff . . . ." And as described extensively above, the record supports the trial court's findings. When working, defendant earned far more than plaintiff, and the trial court failed to find credible defendant's testimony that he could not work at the time

of trial due to health issues. And throughout the proceedings, defendant was less than forthcoming with many aspects of his financial position.

Defendant argues that "as it pertains to [the court's] claim that [he] was dilatory in providing information related to his settlement, [he] did not receive notification of the settlement until November 11, 2024 and was not familiar enough, as a non-attorney, to know what he was allowed to comment on during then-ongoing litigation." But the record demonstrates that defendant was not forthcoming with any aspect of the Ford lawsuit, not just the settlement itself. When asked for the date he filed suit, defendant asserted could not remember, and gave a possible time without confirmation. He also admitted that plaintiff's counsel repeatedly asked for information regarding the lawsuit, but that his attorney never gave plaintiff's counsel the information. Moreover, the court itself had to prod defendant for information on the lawsuit, even going so far as to call the attorney in that case on the record to determine if he should order disclosure of information regarding the lawsuit. Accordingly, we find no clear error in the court's findings, and affirm the court's decision to award plaintiff 25% of defendant's compensatory damages from the Ford settlement.

Finally, with regarding to property distribution, defendant argues that the trial court did not act in the interest of equitable distribution.

Again:

> The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances. Although mathematical equality is not required in the division of the marital estate, the trial court must clearly explain any significant departure from congruence. [*Seifeddine*, 327 Mich App at 522 (quotation marks and citations omitted).]

Debts and liabilities are included as part of the distribution of property. See *Butler v Simmons-Butler*, 308 Mich App 195, 208-209; 863 NW2d 677 (2014). Generally:

> [M]arital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage. Once a court has determined what property is marital, the whole of which constitutes the marital estate, only then may it apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances. As a general principle, when the marital estate is divided each party takes away from the marriage the party's own separate estate with no invasion by the other party. [*Cunningham*, 289 Mich App at 201 (quotation marks and citations omitted).]

Defendant first argues that the court should have considered the loans from his brother marital property and divided them between the parties, citing an unpublished case in which this Court reversed the trial court's decision to exempt from the marital estate loans from his family members, reasoning that although the plaintiff did not negotiate the loans, much of the money was used for the benefit of both parties, and no evidence demonstrated the plaintiff's failure to consent to the loans. Further, the Court noted that the person loaning the money insisted on immediate payment when the parties separated.

Here, plaintiff testified that she neither knew about, nor consented to repayment of, the loans when defendant and his brother allegedly agreed to the arrangement. And defendant contested plaintiff's assertion that she did not know about the loans, testifying that he told her his brother was helping him pay the bills, but agreed that she did consent to being responsible for repayment of the loans.

Moreover, contrary to defendant's assertions, the record demonstrates a legitimate dispute regarding the purpose of the loans and whether the money was used for marital expenses like the mortgage and car payments. Defendant cites to his and his brother's testimony that the loans were needed for defendant to keep up with his bills, including the mortgage and car payments. But during questioning from plaintiff's counsel, defendant stated that while he deposited his brother's checks into his Dearborn Federal Credit Union (DFCU) account, he paid the mortgage using funds from his Woodlawn account. Going through the expenses from his DFCU account, where he deposited the checks from his brother, defendant admitted much of the funds in that account were spent on eating out for himself and the parties' daughter. And defendant failed to provide a strong explanation for the surplus of funds in his accounts noted by plaintiff's counsel, stating that he kept any extra money in case something came up. Further, defendant testified that the funds were not used to make plaintiff's car payments, despite the fact that defendant had always made the payments and was required to continue doing so by the court's status quo order. From all of the above, we conclude that there was no clear error in the trial court's findings that neither defendant nor his brother testified credibly regarding the loans, and that the loans lacked any formality and were agreed to outside of plaintiff's knowledge.

We are also unconvinced by defendant's sparse argument that "the division of the credit cards, the medical bills for both [defendant] and the parties' daughter as well as the [defendant's] maintenance of all household bills after the [plaintiff] deserted the home in August 2023 all should have been considered in the division of marital property." Plaintiff testified that defendant had complete control over his credit cards during the parties' marriage, and otherwise controlled the finances, and defendant fails to provide any real argument or record citations to the contrary. Indeed, from the testimony at trial, it appears that along with his other financial information, defendant was not forthcoming about his credit card expenses, and failed to produce any detailed information during litigation.

With regard to the medical debt, the court ordered that each party be responsible for his or her own debt, and defendant fails to provide any meaningful argument regarding why such a division is inequitable. See *Berger*, 277 Mich App at 712 ("A party abandons a claim when it fails to make a meaningful argument in support of its position."). Defendant testified that he left plaintiff's medical bills in a stack near the front door of the marital home, and asked the parties' daughter to give plaintiff her mail from time to time. And he makes no reviewable argument that the court erred when it refused to admit into evidence defendants' medical bills.

Accordingly, we reject defendant's arguments that the court's division of the loans and other debt was not fair and equitable.

## III. SPOUSAL SUPPORT

Defendant next asserts that the trial court abused its discretion by awarding plaintiff spousal support.

> Whether to award spousal support is in the trial court's discretion, and the "trial court's decision regarding spousal support must be affirmed unless we are firmly convinced that it was inequitable." *Gates v Gates*, 256 Mich App 420, 432-433; 664 NW2d 231 (2003). This Court reviews underlying findings of fact for clear error. *Id*. at 432. "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Id*. at 432-433. [*Richards*, 310 Mich App at 690.]

Under MCL 552.23(1):

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party . . ., the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

"The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished, and spousal support is to be based on what is just and reasonable under the circumstances of the case." *Richards*, 310 Mich App at 691. Factors to consider when awarding spousal support include:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Id*., quoting *Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003) (quotation marks omitted).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Loutts v Loutts*, 298 Mich App 21, 32; 826 NW2d 152 (2012) (quotation marks and citation omitted).

Here, the court listed the factors, stated that it considered each, and awarded spousal support, reasoning:

> The parties were married for approximately 11 years. Plaintiff is 52 years old and the Defendant is 56. They no longer have any minor children. During the marriage, the Defendant was the higher earning spouse, and was solely responsible

for the financial upkeep of the household. [Plaintiff] worked prior to the marriage and after the minor child started going to school. The issues for this Court to consider is the termination of the Defendant from his employment and what he is currently earning as opposed to his earning ability, and his alleged health issues. Presently the Plaintiff remains employed and is able to work while the Defendant is not working and not really looking for employment [c]iting his deteriorating kidney and other medical issues. The Court has already awarded [plaintiff] 50% of the marital home, 50% of the marital interest of the SSIP and/or pension, 50% of the lost wages in the Ford/EEOC Claim, and invaded the Compensatory Damage part of the Claim to award the Plaintiff based in part on Defendant's conduct and not being forthcoming with financial information and documentation. The Court further finds that although the Defendant is not actively seeking employment, he is employable. He has the education and the experience to find employment, whether as an engineer or find other employment related to the auto industry, of which he has extensive experience. [Defendant] has worked from home and this Court finds that he is able to find employment, whether from home or in person, and has intentionally failed to seek employment. Although he listed several serious health issues, the fact that no documentation of any kind verifying or supporting his claims, nor any professional or medical testimony was presented, leads this Court to believe that the health issues are not as serious as testified to by Defendant. Therefore, based on all factors, and the testimony and evidence presented, the Court will hereby award the Plaintiff modifiable rehabilitative spousal support for a period of twelve months in the amount of $500.00 per month to be paid by the Defendant commencing April 1, 2025 and continuing for a total of twelve (12) months.

Defendant argues that the court failed to consider in its final determination what plaintiff earned running her own salon when the parties lived in Buffalo, and plaintiff's Paycheck Protection Program (PPP) and Small Business Administration (SBA) loans. The court did not explicitly consider the amount plaintiff earned when she owned a salon in Buffalo in making its spousal support determination, but we fail to see how such information would have affected the court's decision. The parties moved to Michigan in 2013 for defendant's work, and agreed plaintiff would take care of the home and their minor daughter at the time. Plaintiff testified that when she did begin working again after the parties' child started school, she was still responsible for school pick-up and maintaining the household, so she was unable to work in the evenings when more customers visit the salon. And she discussed the difficulty in establishing a client base after the parties' move, which defendant confirmed during his testimony.

With regard to the SBA and PPP loans, the trial court did discuss each in its findings of fact, stating plaintiff testified that she did not use the money for household bills with the exception of some household improvements. The evidence demonstrates that these loans were meant as assistance during the pandemic, and were based on plaintiff making $40,000 per year, as the court stated in its opinion and order, which was still far less than defendant earned throughout his employment with Ford and the parties' marriage. And plaintiff testified that she used much of the money in an attempt to further her career, although it did not pan out. Further, plaintiff indicated that she still owed money on the SBA loan, and should be solely responsible for that debt. We fail

to see why, based on this record, loans given to plaintiff and spent during the parties' marriage should have altered the court's decision to award plaintiff spousal support.

We also reject defendant's assertions that the court disregarded plaintiff's testimony that she was mostly paid in cash, taking her tax returns at face value, and downplayed his health issues and the economic climate of the automotive industry to award plaintiff spousal support. Plaintiff did testify that she was mostly paid in cash, but clarified that she provides her salon appointment book to the woman who does her taxes, and tells the woman what she charges for each service in order to calculate her earnings. And she provided her 2022 tax return to the court. In contrast, defendant provided what turned out not to be his actual 2022 tax return to the court after testifying that he was unsure whether he filed his 2022 taxes. Moreover, defendant failed to produce medical documentation of his alleged inability to work for health reasons, admitted he had not applied for disability, and discussed dietary restrictions when asked to discuss his specific health limitations. The court disbelieved defendant's testimony, and we will not disturb its credibility determination. *Richards*, 310 Mich App at 694. And although the court did not specifically impute income to defendant, its discussion of defendant's earning potential and perceived ability to secure employment was entirely appropriate under the circumstances. See *Cassidy v Cassidy*, 318 Mich App 463, 475; 899 NW2d 65 (2017) ("If a court finds that a party has voluntarily reduced the party's income, the court may impute additional income in order to arrive at an appropriate alimony award.") (quotation marks and citation omitted).

Finally, defendant fails to cite to any evidence in support of his assertion that the trial court indicated it would not award spousal support in this case and, regardless, the court speaks through its written orders. *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). And with regard to spousal support, the court listed and considered the applicable factors, finding that those factors favored plaintiff's request for spousal support, and limited the award to 12 months. Accordingly, we hold that the court's award was just and reasonable under the circumstances.

## IV. ATTORNEY FEES

Defendant last argues that the trial court arbitrarily awarded attorney fees.

"[Q]uestions of law are reviewed de novo[.]" *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). This Court reviews a trial court's award of attorney fees for an abuse of discretion. *Richards*, 310 Mich App at 699.

> An abuse of discretion occurs when the result falls outside the range of principled outcomes. However, findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error. A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. [*Id*. at 699-700 (quotation marks and citations omitted).]

"Michigan follows the 'American Rule,' which states that 'attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract.' " *Skaates*, 333 Mich App at 84, quoting *Reed*, 265 Mich App at 164. "In a divorce action, attorney fees are permitted by statute and court rule." *Skaates*, 333 Mich App at 84.

MCL 552.13(1) states: "In every action brought, either for a divorce or for a separation, the court may require either party . . . to pay any sums necessary to enable the adverse party to carry on or defend the action, during its pendency." And MCR 3.206(D) provides:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:
>
> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or
>
> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

Thus, MCR 3.206(D)(2)(a) considers a party's ability to pay, whereas MCR 3.206(D)(2)(b) considers only a party's behavior, with no reference to ability to pay. See *Richards*, 310 Mich App at 701.

In support of plaintiff's request for attorney fees, plaintiff's counsel submitted an affidavit in support of the fees requested, an itemized list of hours worked on particular tasks, and the 2023 Economics of Law Report. The court then awarded fees under MCR 3.206(D)(2)(b) rather than (D)(2)(a), stating in part:

> Plaintiff's counsel is seeking approximately $122,395.35 in attorney fees. To begin with, based on the parties' income, asset and debt distributions, and what is at stake in this particular case, this Court finds the requested amount to be absolutely unreasonable under the circumstances. And to award such an excessive amount in a case like this would be unequivocally unjust, inequitable, unfair and in this Court's opinion, simply wrong.
>
> Although the amount is unreasonable, the request for attorney fees is not. The Court believes that the Defendant acted in bad faith when he failed to provide financial information and disclosures, including basic information regarding his tax filings, the Ford/EEOC Claim, debts, loans, and mortgage information. His failure led to a pro-longed litigation process and prevented the case from settling (even after 3 rounds of mediation). Furthermore, the Defendant failed to abide by the Status Quo Order entered by this Court by failing to make payments on the Explorer and may have taken out loans against his pension or the SSIP account.
>
> Based on the foregoing, the Court hereby awards the Plaintiff attorney fees in the amount of $10,000.00 to be paid to Plaintiff's counsel by the Defendant within 30 days of the date of this Opinion and Order.

As described extensively above, the court's findings are supported by the record, and they are sufficient to establish grounds for an award of attorney fees under MCR 3.206(D)(2)(b), as they constitute discovery practices in violation of the rules, and not just an extension of litigation. And defendant has failed to identify any basis for determining that the court's findings amounted to clear error. He asserts that he was diligent in requesting retirement account information from Ford, and should not be charged fees twice for that same issue, but that argument ignores the several other bases on which the court based its award of fees.

Moreover, we reject defendant's argument that the court should have held an evidentiary hearing with regard to the fees. "[T]here is no error in failing to conduct an evidentiary hearing if the parties created a sufficient record to review the issue, and the court fully explained the reasons for its decision." *Cassidy*, 318 Mich App at 488 (quotation marks and citation omitted). And both occurred here. Defendant asserts that an evidentiary hearing should have been conducted to determine if the fees were reasonable, but fails to challenge any specific information, including plaintiff's counsel rate or the services rendered, all of which plaintiff's counsel provided support for as part of plaintiff's request for attorney fees.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Stephen L. Borrello